UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
(Civil Division)

| | |
|---|---|
| SANDRA PEEK <br> 3332 Huntley Square Drive, Apt B2 <br> Temple Hills, Maryland 20748 <br><br> Plaintiff, <br><br> v. <br><br> NATIONAL GEOGRAPHIC SOCIETY <br> 1145 Seventeenth Street, N.W. <br> Washington, D.C. 20036 <br><br> Defendant. <br><br> Serve: Terrence B. Adamson, Executive Vice <br> President and Resident Agent <br> National Geographic Society <br> 1145 Seventeenth Street, N.W. <br> Washington, D.C. 20036 | Civil Action No.: _____ <br><br> JURY DEMANDED |

## COMPLAINT

**COMES NOW** Plaintiff Sandra Peek, by and through her undersigned counsel, hereby files this Complaint and sues Defendant National Geographic Society for cause of action states as follows:

## NATURE OF THE CASE

1. Plaintiff Sandra Peek ("Plaintiff" or "Ms. Peek") brings this civil action for relief from discrimination and a hostile work environment on the basis of her race (African American) for violations against the Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*; the Civil Rights Act of 1991, 42 U.S.C. § 1981a; and the District of Columbia Human Rights Act, D.C. Code § D.C. Code § 2-1401.01, *et seq.* Ms. Peek also seeks relief for being wrongfully terminated.

## JURISDICTION AND VENUE

2. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981a. It further has supplemental jurisdiction over this matter pursuant to 28 U.S.C. § 1367, as it asserts claims that arise under the District of Columbia Human Rights Act, D.C. Code § 2-1401.01, *et seq.* ("DCHRA").

3. Plaintiff has exhausted all of her administrative remedies and has received a Dismissal and Notice of Rights from the United States Equal Employment Opportunity Commission ("EEOC"), dated October 29, 2013. Plaintiff now timely brings this Complaint within 90-days from receipt of that Notice.

4. Venue is appropriate and based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, a non-profit organization that operates within the District of Columbia, and occurred in the District of Columbia. 28 U.S.C. § 1391. Venue is further proper in this district because there is no other district in which this action may otherwise be brought. *Id.*

## PARTIES

5. Plaintiff Sandra Peek is a resident of the Prince George's County and is currently domiciled at 3332 Huntley Square Drive, Apartment B2, Temple Hills, Maryland 20748. Ms. Peek is a United States citizen. At all times, Ms. Peek was an "employee" within the meaning of the statutes under which Plaintiff brings her claims.

6. Defendant National Geographic Society ("Defendant" or "NGS") is one of the largest nonprofit scientific and educational institutions in the world. Defendant is headquartered at 1145 Seventeenth Street, N.W., Washington, D.C. 20036. At all times, National Geographic Society was an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

7. Defendant is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is the employer of persons who have committed discriminatory acts and/or omission against Plaintiff within the course and scope of their employment. Therefore, Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

## FACTS

8. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

9. During all relevant times, Ms. Peek was an employee of NGS.

10. Ms. Peek is African American.

11. Ms. Peek's non-African American co-workers received preferential treatment.

12. Ms. Peek also observed her non-African American supervisor (S.S.) being provided preferential treatment that her African American supervisor (K.B.) was not provided.

13. Moreover, the NGS did not treat Ms. Peek's similarly situated coworkers (non-African American) in the same demeaning, hostile and discriminatory manner.

3

14. For example, unlike her non-African American coworkers, Ms. Peek was unfairly scrutinized, including being required to account for her time when she left her desk for ten minutes to bring her lunch back from the cafeteria.

15. Ms. Peek was also required by her White supervisor (S.S.) to expedite all payments.

16. None of Ms. Peek's similarly situated coworkers (non-African American) were required to regularly expedite payments.

17. Additionally, from June 2009 until her terminated in March 2011, Ms. Peek's workload was regularly increased.

18. Despite the increase in her workload, Ms. Peek was not provided any additional assistance and not provided overtime.

19. However, Ms. Peek's similarly situated coworkers (non-African American), including D.W., S.S., V.S. and C.W., were provided additional assistance to help with their workload, including backlogged work, and provided overtime.

20. When Ms. Peek was on approved bereavement leave in October/November 2009 due to the deaths of her father and aunt, Ms. Peek was not provided a temporary employee and her invoices were not processed.

21. However, whenever Ms. Peek's similarly situated coworkers (non-African American), including D.W., utilized their available leave, they were provided temporary workers to fill in for them and/or had their invoices processed.

22. In January 2010, Ms. Peek was required to provide daily desk statuses.

23. Ms. Peek's similarly situated coworkers (non-African American) were not required to provide daily desk statuses.

24. From April 2010 to September 2010, Ms. Peek was receiving Workman's

4

Compensation due to a job-related injury.

25. Despite being Workman's Compensation and not receiving any additional assistance, Ms. Peek kept her workload current.

26. Ms. Peek took approved leave in late April/early May 2010.

27. Again Ms. Peek was not provided a temporary employee and her invoices were not processed when she was on approved leave.

28. In February 2010 and July 2010, NGS was provided Ms. Peek with undeserved Written Warnings for alleged job performance issues.

29. However, in January 2010, Ms. Peek was provided an overall satisfactory performance evaluation by K.B. and the alleged performance issues that made up the February 2010 and July 2010 Written Warnings were not documented.

30. Ms. Peek was not provided an opportunity to meet with her supervisors to discuss the Written Warnings, and she was never provided a final Written Warning.

31. Defendant unlawfully and unjustly terminated Ms. Peek's employment on or around March 2, 2011.

32. During the same period of time that Ms. Peek was provided a Written Warning and terminated, Ms. Peek's similarly situated coworkers (non-African American) had a backlog of work and performance/conduct issues but were not provided Written Warnings or terminated from their employment.

33. Namely, D.W. (non-African American) had a backlog of approximately 200 invoices and was not provided a Written Warning.

34. Additionally, S.S. (non-African American) had a substantial amount of backlogged workload and was not provided a Written Warning.

35. C.W. (non-African American) arrived late to work on a daily basis but was

5

not provided a Written Warning.

36. R.L (non-African American) and M.L. (non-African American) regularly used the office phone and their respective cellular phones for personal matters in front of a supervisor but neither were provided a Written Warning.

37. Upon information and belief, the only other NGS employee similarly situated to Ms. Peek who received a Written Warning was an African American employee (M.C.).

38. On or around August 31, 2011, Ms. Peek filed a Charge of discrimination and hostile work environment based on race.

39. After investigating the matter, the EEOC issued Ms. Peek a Dismissal and Notice of Rights, dated October 29, 2013.

## CAUSES OF ACTION

### COUNT I
#### (Employment Discrimination on the Basis of Race)

40. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

41. Title VII and the DCHRA state it is an unlawful employment practice for an employer, among other things, to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of the individual's race, color, religion, sex, or national origin.

42. As an African American, Plaintiff is a member of a protected class.

43. The aforementioned adverse employment actions, including Plaintiff's termination, materially affected the terms, privileges and conditions of Plaintiff's employment.

44. Any reason proffered for Defendant's unlawful conduct would not be legitimate, and it would be pretext.

45. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race.

46. Defendant has limited, segregated and classified Plaintiff in a way which deprives her of employment opportunities and otherwise adversely affected her status as an employee because of her race.

47. Other employees who were similarly situated, but members of a different protected class than Plaintiff, have received different and better terms and conditions of employment.

48. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

49. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

50. In violation of Title VII and the DCHRA, Defendant knowingly and intentionally subjected Plaintiff to discrimination based on her race by subjecting her to the aforementioned adverse employment actions.

51. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the legal rights of Plaintiff because of her race.

52. Defendant's policies, practices and adverse conduct toward Plaintiff have had an unjustified, adverse and disparate impact on Plaintiff, and constitute race discrimination in violation of Title VII and the DCHRA.

53. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to loss of income, benefits, promotion and promotional opportunities, career opportunities – and is entitled to all available legal and equitable remedies.

54. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

55. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

a. Enter a judgment in Plaintiff's favor and against Secretary Arne Duncan for discrimination on the basis of her race in violation of Title VII and the DCHRA;

b. Award compensatory damages in excess of Two Hundred Thousand Dollars ($200,000.00);

c. Award lost wages and benefits;

d. Award reasonable attorney fees, costs and expenses incurred for this action;

e. Declaratory and injunctive relief;

f. Order the Defendant institute a policy and procedure to be implemented against discrimination;

g. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

h. Supervisory training for the supervisors at issue herein; and

i. Such other and further relief as this Court deems just and proper.

## COUNT II
### (Hostile Work Environment)

56. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

57. As a result of Plaintiff's protected status and participation in protected activity, Plaintiff's supervisors routinely humiliated Plaintiff and engaged in persistent pattern of severe and pervasive harassment as set forth herein, which created a hostile and offensive workplace environment.

58. Plaintiff was regularly and continually subjected to harassing conduct that included unfair scrutiny, isolated, disrespected by her supervisors, stigmatized, received undeserved Written Warnings, and unjustly terminated which created a hostile and abusive work environment, for approximately two years (March 2009 to March 2011).

59. Plaintiff believes that she was subjected to a hostile work environment based on her race (African American).

60. Defendant's unlawful conduct was unwelcomed by Plaintiff.

61. Defendant's deliberate conduct of the adverse actions referred to throughout this Complaint created a hostile and abusive work environment.

62. Plaintiff was subjected to harassment because her race (African American), and it unreasonably interfered and affected a term, condition, or privilege of Plaintiff's employment.

63. Defendant knew or should have known of the harassment. Defendant failed to adequately investigate the harassment and took no effective, immediate or remedial action. Despite Plaintiff's complaints, the harassment continued unabated and increased over time.

64. By failing to take appropriate and effective remedial action against Plaintiff's supervisors, Defendant acted with malice or with reckless or callous indifference to Plaintiff's complaints.

65. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to loss of income, benefits, promotion and promotional opportunities, career opportunities – and is entitled to all available legal and equitable remedies.

66. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

67. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

    a. Enter a judgment in Plaintiff's favor and against Defendant for harassment in violation of Title VII and the DCHRA;

    b. Award compensatory damages in excess of Two Hundred Thousand Dollars ($200,000.00);

    c. Award lost wages and benefits;

    d. Award reasonable attorney fees, costs and expenses incurred for this action;

    e. Declaratory and injunctive relief;

    f. Order the Defendant institute a policy and procedure to be implemented against discrimination;

    g. Equal Employment Opportunity training for Defendant and the

supervisory officials at issue herein;

h. Supervisory training for the supervisors at issue herein; and

i. Such other and further relief as this Court deems just and proper.

## COUNT III
### (Wrongful Termination)

68. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

69. Plaintiff's wrongful termination was in violation of federal and District of Columbia public policy that provides it is illegal for an employer to effectively terminate an employee because of the employee's protected class, here race.

70. Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the legal rights of Plaintiff because of her race.

71. Defendant's policies, practices and adverse conduct toward Plaintiff have had an unjustified, adverse and disparate impact on Plaintiff, and constitute race discrimination in violation of Title VII and the DCHRA.

72. Defendant discriminated against Plaintiff because of her race by engaging in, tolerating or failing to prevent the discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

73. As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to loss of income, benefits, promotion

and promotional opportunities, career opportunities – and is entitled to all available legal and equitable remedies.

74. Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

75. Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

   a. Enter a judgment in Plaintiff's favor and against Defendant for wrongfully terminated Plaintiff;

   b. Award compensatory damages in excess of Two Hundred Thousand Dollars ($200,000.00);

   c. Award lost wages and benefits;

   d. Award reasonable attorney fees, costs and expenses incurred for this action;

   e. Declaratory and injunctive relief;

   f. Order the Defendant institute a policy and procedure to be implemented against discrimination;

   g. Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

   h. Supervisory training for the supervisors at issue herein; and

   i. Such other and further relief as this Court deems just and proper.

## COUNT IV
### Equitable Relief

76. Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

77. Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, present clear and present dangers to the employees of Defendant and could result in further illegal actions on the party of Defendant, by and through its agents, servants and employees.

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

   a. Order the Defendant institute a policy and procedure to be implemented against discrimination;

   b. supervisory officials at issue herein;

   c. Supervisory training for the supervisors at issue herein; and

   d. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

78. Plaintiff demands a trial by jury on all issues set forth herein.

Respectfully submitted,

By: *cdonna williams rucker /MBC*
DONNA WILLIAMS RUCKER
 (D.C. Bar No. 446713)
RUCKER, BROWN & HENRY, P.C.
888 Sixteenth Street, N.W., Suite 800
Washington, DC 20006
Office: (202) 349-9830
Facsimile: (202) 355-1399
Email: drucker@ruckerlawpc.com
   drucker@rbhlegal.com

January 29, 2014                              Counsel for Plaintiff